## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

*************************************
KATHY A. BERTUCCI              *
ARCHAMBAULT and JOSEPH F.    *
ARCHAMBAULT                *
            **Plaintiffs,**      *
v.                          *
                         *
AURORA LOAN SERVICES, LLC,    *
            **Defendant.**      *
*************************************

Civil Action No. 1-11-cv-10373

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

In support of its Motion to Dismiss, Defendant Aurora Loan Services, LLC

("Aurora"), by and through its attorneys, Doonan, Graves & Longoria, LLC, hereby submits

the following Memorandum of Law.

## I.      INTRODUCTION

The Plaintiffs commenced this action seeking to permanently enjoin the foreclosure of

their mortgage and obtain monetary damages based on the alleged lack of standing to

foreclose by Aurora.  The Plaintiffs are not challenging the origination of the loan or Kathy

A. Bertucci Archambault's default.  Joseph F. Archambault is not a party to the mortgage

contract, however; he is a named party in this action. The Complaint is deficient as to specific

factual allegations, which if proven would justify the monetary relief requested by the

Plaintiffs and/or support a permanent injunction of the mortgagee's right to foreclose.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2005, the Plaintiff, Kathy A. Bertucci Archambault ("Mrs. Archambault"),

executed a Note to GN Mortgage, LLC, in the amount of three hundred fifty thousand and

00/100 ($350,000.00) dollars ("Note").  *See* Exhibit A (a true and correct copy of the Note is

attached hereto and incorporated herein).  To secure the loan obligation, Mrs. Archambault

gave a Mortgage to Mortgage Electronic Registration Systems, Inc, as nominee for GN

Mortgage, LLC on property located at 149 Federal Street, Salem, MA ("Property"), which

was recorded on July 13, 2005, in the Essex County (Southern District) Registry of Deeds in

Book 24550, at Page 284 ("Mortgage").  *See* Exhibit B (a true and correct copy of the

Mortgage is attached hereto and incorporated herein). An Assignment of Mortgage reflecting

the transfer of the aforesaid Note and Mortgage from Mortgage Electronic Registration

Systems, Inc, as nominee for GN Mortgage, LLC to the Defendant, dated June 5, 2008, was

recorded on June 25, 2008, at the aforesaid Registry in Book 27872, at Page 226

("Assignment").  *See* Exhibit C (a true and correct copy of the Assignment is attached hereto

and incorporated herein).[1]

On March 1, 2007, Mrs. Archambault defaulted on her loan obligation and the

Defendant commenced foreclosure proceedings against the subject property.  After obtaining

judgment in the Land Court, the Defendant scheduled the foreclosure sale for September 7,

2007, which was postponed to December 7, 2007, due to Mr. and Mrs. Archambault filing

Chapter 13 Bankruptcy Petition No. 07-17768. The December 7, 2007, foreclosure sale was

postponed until March 7, 2008, as the Archambaults were still in Bankruptcy. The March 7,

---

[1] Because the Plaintiff's claims relate to the loan obligation and the enforcement of the Defendant's lien, the loan documents and foreclosure documents are incorporated within the complaint and should be considered in connection with this motion to dismiss. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

2008, sale was postponed until May 7, 2008, due to the Borrowers Bankruptcy. The March 7, 2008, foreclosure sale was cancelled due to the Bankruptcy. In June 2008, the Bankruptcy was dismissed and the foreclosure action proceeded with the Notice of Mortgagee Sale and a new sale date was scheduled for July 25, 2008. The July 25, 2008, foreclosure sale was cancelled as the Bankruptcy was reinstated. In May 2009, the foreclosure sale was reset for July 1, 2009, and the foreclosure action proceeded with the Notice of Mortgagee Sale. The July 1, 2009, foreclosure sale was cancelled as the borrowers were attempting to enter into loss mitigation with Aurora. In October 2009, the foreclosure action again proceeded with the Notice of Mortgagee Sale and the new foreclosure sale date of November 25, 2009. The November 25, 2009, foreclosure sale was cancelled as the borrowers were in a loss mitigation workout. In March 2010, the foreclosure action resumed with the Notice of Mortgagee Sale and a foreclosure sale was scheduled for April 22, 2010. The foreclosure sale scheduled for April 22, 2010, was cancelled for loss mitigation workout. On April 13, 2010, the Plaintiffs filed for Chapter 7 Bankruptcy, Petition No. 10-13946. On July 21, 2010, the Bankruptcy was discharged. In August 2010, the foreclosure action was recommenced with the Notice of Mortgagee Sale and a sale was scheduled for September 8, 2010. The September 8, 2010, foreclosure sale was cancelled, as the borrowers were attempting a loss mitigation workout with Aurora. In January 2011, the foreclosure action continued with the Notice of Mortgagee Sale and a new foreclosure sale was set for March 8, 2011. On February 11, 2011, the Plaintiffs filed a Motion to re-open their Bankruptcy case and Judge Bailey granted their motion and the case was re-opened. The March 8, 2011, foreclosure sale was postponed due to the filing of this instant litigation to April 11, 2011. On March 25, 2011, the re-opened

Bankruptcy was closed by the Court. The April 11, 2011, foreclosure sale was again postponed due to the pending litigation until May 11, 2011, at 11 a.m.

On March 1, 2011, the Plaintiffs filed a Motion for a Restraining Order ("Plaintiffs' Motion") and Complaint in Essex County Superior Court. After being served a copy of the Plaintiffs' Motion and Complaint, through the undersigned, the Defendant removed the matter to this Court.  The Plaintiffs do not dispute their non-payment of the loan, but rather assert that Aurora lacks standing to foreclose the mortgage.  Complaint ¶12, 15, 18.

The Plaintiffs' Complaint contains three (3) counts for relief.  In Count One, the Plaintiffs allege Aurora lacks standing to foreclose due to the fact that the employee who signed the purported assignment of mortgage was not an employee of MERS and has not been properly appointed or authorized to execute the same.[2] In Count Two, the Plaintiffs allege that the entity on whose behalf MERS purported to assign –"GN Mortgage LLC"- did not exist on the date the assignment was executed.[3] In Count Three, the Plaintiffs allege that Aurora is not the holder of the promissory note or a non-holder in possession of the note with the rights of a holder, it may not enforce the promissory note and therefore lacks authority to exercise any rights as a "mortgagee," including but not limited to foreclosing the subject mortgage.[4]   The Plaintiff seeks damages; preliminary and permanently enjoining the foreclosure auction; an order declaring Aurora lacks standing to foreclose, and attorney's fees and costs.

---

[2] This exact claim was presented and rejected in *Kiah v. Aurora Loan Services, LLC*, Case No. 10-40161-FDS, Amended Memorandum and Order on Defendants' Motion to Dismiss (D. Mass. March 3, 2011) at p. 12.
[3] This exact claim was also considered and rejected in *Kiah* at pages 8 and 9.
[4] This claim is precluded by the Superior Judicial Courts recent decision in *Ibanez*. *See U.S. Bank Nat'l Ass'n v. Ibanez*, 2011 WL 38071 (Mass.)

The Plaintiffs have indicated they plan to re-file their Motion for Preliminary Injunction in this Court.  The foreclosure sale is currently scheduled for May 11, 2011. The underlying Complaint for damages, as set forth below, does not sufficiently state a claim upon which relief can be granted, and must be dismissed as a matter of law.

### III.    LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "The pleading standard Rule 8 announces  . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Fed. R. Civ. P. 12(b)(6) allows for the dismissal of a complaint, if it fails to state a claim upon which relief can be granted. Dismissal is appropriate when the complaint fails to plead sufficient facts demonstrating a plausible entitlement to the relief requested. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1950 (2009).  When reviewing a complaint for dismissal, the "factual allegations must be enough to raise a right to relief above the speculative level . . ." *Bell Atlantic Corp.,* 550 U.S. at 555.  In order to survive a motion to dismiss, a complaint must allege enough facts to support a claim for relief that is not just "conceivable" but "plausible on its face." *Id*. at 570. Bare allegations and legal conclusions and/or a "formulaic recitation of a cause of action's elements will not do." *Id* . at 555.

In reviewing a motion to dismiss, when a complaint includes exhibits and said exhibits contradict the allegations set forth in the complaint, the exhibits control. *Clorox Co. v. Procter & Gamble Commercial Co*. 228 F.3d 24, 32 (1st Cir. 2000).  Additionally, the

Court may take judicial notice of actions proceeding in other forums and matters of public record, as well as, documents, whose authenticity is not challenged, that are incorporated by reference within the complaint's factual allegations. *See In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15-16 (1st Cir. 2003) ("These principles require us to consider not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice."); *see also Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

## IV.   ARGUMENT

### A.   Plaintiffs' Cause of Action Challenging the Defendant's Standing Must be Dismissed Because it Fails to State a Claim Upon Which Relief can be Granted.

Notwithstanding the fact that an Assignment of Mortgage is of record, and was of record prior to the first publication in full compliance with the Massachusetts Supreme Judicial Court's decision in *Ibanez*, the Plaintiffs allege that the Defendant lacks standing to foreclose.  This claim must be rejected as a matter of law, because the Plaintiffs' Complaint is legally and factually insufficient to support a viable claim for relief under this theory in light of the well-settled of the law in Massachusetts.

The loan documents speak for themselves and upon careful review of note, endorsement, and assignments of the mortgage as outlined herein, it is respectfully submitted that the Plaintiffs have failed to plead a cause of action for standing.  The Defendant has not knowingly, purposefully or willfully submitted any documentation that does not truthfully and properly reflect the chain of title of the underlying Mortgage and Note.

### 1.   The Mortgage was Properly and Lawfully Assigned.

As for the assignments executed by the successor entities who held rights to the Mortgage, the Plaintiffs' argument that the employee who signed the purported assignment of

mortgage was not an employee of MERS and has not been properly appointed or authorized to execute the same is unavailing and is not supported by the facts.  This exact same argument was made and rejected in this District. *See Kiah* at Pages 12, 13 and 14.

The chain of title is unassailable.  Since the recording of the Assignment of Mortgage in June 2008, record title to the mortgage has stood exclusively in the name of the Defendant. The Plaintiffs' claims that the Mortgage has not been legally conveyed, and that in turn Aurora lacks standing, are without merit.

Moreover, the Mortgage is the security interest for the Note and, thus, follows the debt it secures.  As specifically stated in the Mortgage securing the Note: "[T]his security instrument secures to the Lender: (i) the repayment of the Loan . . .  and (ii) the performance of the Borrower's covenants and agreements under this Security Instrument and the Note." at page 3 of 15 of the Mortgage executed by Kathy A. Bertucci Archambault on July 8, 2005.

A transfer in full of the obligation automatically transfers the mortgage as well unless the parties intended otherwise. Restatement (Third) of Property (Mortgages) § 5.4. Moreover, as the Supreme Court held in *Carpenter v. Longan*, 83 U.S. 271, 275 (1872), "[T]ransfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter."  *See also First Nat. Bank of Cape Cod v. North Adams Hoosac Sav. Bank*, 7 Mass. App. Ct. 790, 796, 391 N.E.2d 689, 693 (1979) ("It has long been held in this Commonwealth that the transfer of a note which is secured by a mortgage is a valid transaction with legal title to the mortgage document remaining with the mortgagee in trust for the purchaser of the note who can thereafter enforce in equity an assignment of the mortgage."). The Note has been assigned to Aurora as endorsed by the attached true and correct copy of same and the unchallenged possession of the Original Note is fatal to

Plaintiffs' attempts to challenge the recorded assignment of mortgage. *See Kiah* at pages 7 and 8.

In the case at hand, the Plaintiffs' allegations do not give rise to a viable claim.  As the record indicates, there is an unbroken chain of title evidencing the Defendant as the assignee of record of the Mortgage and holder of the Note.  Whatever rights the originating lender had in the Note and Mortgage now belong to the Defendant by virtue of the endorsement of the Note by GN Mortgage LLC to the Defendant and the assignment of mortgage by MERS, as nominee for GN Mortgage LLC, to the Defendant.

> 2. <u>The Plaintiff Does Not Have Standing to Challenge the Validity of the Assignment of Mortgage.</u>

Plaintiffs have no standing to challenge the validity of the Assignment of Mortgage. Whether the assignment of Plaintiffs' mortgage was executed by one with authority to do so, the Plaintiffs-borrowers are "uninvolved and unaffected."  *Bridge v. Aames Capital Corp.*, 2010 WL 3834059, at * 4-5 (N.D. Ohio 2010) (Regarding an assignment of plaintiff's mortgage, "[plaintiff's] role in the exchange . . . and how it affects her contractual obligations remains the same-uninvolved and unaffected. . . Plaintiff has not suffered any injury as a result of the assignment").  Plaintiffs have no standing, therefore, to object or make a claim based thereon.  *See id.*, at * 3, 5 ("Courts have routinely found that a debtor may not challenge an assignment between an assignor and assignee. . . . Given that Plaintiff was not a party to the assignment of the Mortgage between [assignor] and [assignee], neither of which dispute the validity of the assignment, and has not and will not suffer any new injury . . . Plaintiff does not have standing to assert her claim."); *Macksey v. Egan*, 36 Mass.App.Ct. 463, 468-69 (1994) (Only a party or intended third-party beneficiary has standing to

challenge the validity of a contract.); *see also Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (A plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties."); *MHI Shipbuilding, LLC v. National Fire Ins. Co. of Hartford*, 286 B.R. 16, 32 (D. Mass. 2002) ("In Massachusetts, however, a third party . . . cannot raise the absence of consideration as a defense to a suit on the assigned cause of action.") (citing *Barker v. Danner*, 903 S.W. 2d 950, 955 (Mo. App. 1995) (the third party debtor is generally not prejudiced by a lack of consideration between assignor and assignee)); CJS ASSIGN § 132 ("[I]f the assignment is effective to pass legal title, the debtor cannot interpose defects or objections which merely render the assignment voidable at the election of the assignor or those standing in his or her shoes.").  Accordingly, because the Plaintiffs lack standing to challenge the validity of the Assignment of Mortgage their claim must be rejected as a matter of law and their Motion must be denied. *See Kiah* at p. 11.

   3.   <u>A Challenge to the Signing Authority of the Signer of an Assignment of
        Mortgage, Even If Successful, Would Not Render an Assignment "Void".</u>

      Even if an assignment of Plaintiffs' mortgage was not executed by one with authority to do so, that fact may render the Assignment of Mortgage voidable, by the assignor, but the assignment is not void.  *See, e.g., Greene v. Reconstruction Finance Corp.*, 24 F.Supp. 181, 183 (D. Mass. 1938) (mortgages executed without authority of majority of stockholders of corporation were not void but were voidable only and subject to ratification by stockholders.); *Commissioner of Banks v. Tremont Trust Co.*, 259 Mass. 162, 179-180 (1927) ("[Officer's] acts in excess of his authority, although voidable by the corporation, legally could be ratified and adopted by it . . ."); RESTATEMENT (SECOND) OF CONTRACTS § 7) (A

principal is free to affirm or to disavow the unauthorized promises of its agent, and thus contracts entered into by the agent acting beyond the scope of his authority are not void but are voidable by the principal.).

The assignment of Plaintiffs' mortgage, even if it is voidable, is a valid and enforceable contract that "imposes on the parties the same obligations as if it was not voidable." *Berenson v. French*, 262 Mass. 247, 260-61 (1928); *see Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 2002 WL 31875204, at *22 (Mass. Super. 2002) ("'Voidable' imports a valid act which may be avoided, rather than an invalid act which may be confirmed"); *Murphy v. Marland*, 62 Mass. 575, 576 (1851) (assignee under voidable assignment made in fraud of creditors might specifically enforce the assigned contract against the debtor); *Penniman v. Freeman*, 1855 WL 5666, at *2 (Mass. 1855) ("[A] voidable assignment, made by a commissioner having jurisdiction of the case, is conclusive evidence of the authority of the assignee to sue"); RESTATEMENT (SECOND) OF CONTRACTS § 7 ("The propriety of calling a transaction a voidable contract rests primarily on the traditional view that the transaction is valid and has its usual legal consequences until the power of avoidance is exercised."). And the parties to the assignment of Plaintiffs' mortgage, i.e., the assignor (MERS) and the assignee (Aurora), have not, and do not contest its validity.[5] *See Kiah* at 11.

## B. Mortgage Electronic Registration Systems Inc. ("MERS") had a Right to Assign the Plaintiff's Mortgage to the Defendant.

The Plaintiffs' claim that MERS did not have the legal power to transfer the Mortgage to the Defendant is without merit and must be rejected as a matter of law. As set forth in detail below, it is undisputed that MERS, as nominee for GN Mortgage LLC, had the

---

[5] Notably, where a principal acquiesces to its agent's unauthorized conduct or fails promptly to disavow the conduct after disclosure of material facts, the power to avoid the legal interests created by the agent's conduct is extinguished. *See, e.g., Linkage Corp. v. Trustees of Boston University*, 425 Mass. 1, 18 (1997).

authority to assign the Plaintiffs' Mortgage to the Defendant in connection with the transfer of the Note to the Defendant.

1.   The Plaintiff's Mortgage

In the case at hand, the Plaintiffs' Mortgage was originally held by MERS as nominee for GN Mortgage LLC, its successor and assigns.  Pursuant to the Plaintiffs' Mortgage, MERS 1) is the nominee for the lender and its successors and assigns;[6] 2) is the mortgagee; 3) holds legal title to the interest granted by the borrowers and 4) has the power to enforce the terms of the mortgage.  By executing the Mortgage, the Plaintiffs consented to MERS' role as nominee and authorized MERS "to take any action required of the Lender" and its successors and assigns, to enforce their rights under the Mortgage. Consequently, MERS has the customary rights of a mortgagee and may act on behalf of the lender and its successor and assigns in executing an assignment of mortgage to the Defendant.  *See In re Huggins*, 357 B.R. 180, 183 (Bankr. D. Mass. 2006); *see also Bassilla v. GMAC Mortgage*, No. 09-J-519 (Mass. App. Ct. Dec. 4, 2009) ("[T]he lender's nominee and record title holder [MERS] had the ability to make a valid assignment.").

The assignment of mortgage from MERS to the Defendant represents a valid transfer in furtherance of the Defendant's rights as holder of the Note.  As nominee for the original lender and *its successors and assigns*, MERS held the Mortgage in trust for the benefit of the Defendant, when the Defendant became the holder of the Note.  *Boruchoff v. Ayvasian*, 323 Mass. 1, 10, 79 N.E.2d 892, 897 (1948) ("Where a mortgage and the obligation secured thereby are held by different persons, the mortgage is regarded as an incident to the obligation, and, therefore, held in trust for the benefit of the owner of the obligation."); *see In*

---

[6] "A nominee is generally understood as a person designated to act in place of another." *In re Huggins*, 357 B.R. at 183 (citing BLACKS LAW DICTIONARY (8th ed. 2004)).

*re Huggin*s, 357 B.R. at 183. There was no need for a formal assignment from MERS to the Defendant, until the loan went into default and the Defendant initiated foreclosure proceedings. *See Carpenter*, 83 U.S. at 275; s*ee also U.S. Bank Nat. Ass'n v. Ibanez*, 2009 WL 79501 (Mass. Land. Ct. March 26, 2009) (Massachusetts law requires that a foreclosing mortgagee have a valid assignment of the mortgage at the time of the notice is published). Because MERS acts as nominee for the current holder of the note, it is not required to have a beneficial interest in the note in order to transfer the mortgage. As a result, the assignment from MERS to the Defendant is valid and the Plaintiff's claim fails as a matter of law.

Upon the transfer of the Note, the Defendant automatically became the equitable holder and owner of the Mortgage, with MERS *solely* acting as nominee for the Defendant and holding the mortgage in trust for it. *Weinberg,* 263 Mass. at 62; *Boruchoff*, 323 Mass. at 10; *Kiah v. Aurora Loan Services, LLC*, Case No. 10-40161-FDS, Amended Memorandum and Order on Defendants' Motion to Dismiss (D. Mass. March 3, 2011).

## V.    CONCLUSION

The Plaintiffs claims that Aurora lacks standing to foreclose must be rejected as they are without merit.

In the case at hand, the Plaintiffs' Complaint fails to state claims for relief that are plausible on their face. As a result, the Defendant respectfully requests that this Court grant its Motion to Dismiss or and for such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

Aurora Loan Services, LLC
By its attorneys,

Dated: 5/3/11                          /s/ Reneau J. Longoria
                                       Reneau J. Longoria, Esq. (BBO #635118)
                                       John A. Doonan, Esq. (BBO# 547838)
                                       Stephen M. Valente, Esq. (BBO#663118)
                                       Doonan, Graves & Longoria, LLC
                                       100 Cummings Center Suite 225D
                                       Beverly, MA 01915
                                       Tel. (978) 921-2670
                                       Fax (978) 921-4870
                                       rjl@dgandl.com


## CERTIFICATE OF SERVICE

        I, Reneau J. Longoria, hereby certify that on 5/3/11, I served a true and correct copy
of the Defendant's Memorandum of Law in Support of its Motion to Dismiss by electronic
notification and/or first class mail, postage prepaid, to:

                                       /s/ Reneau J. Longoria
                                       Reneau J. Longoria Esq.

Kenneth D. Quat
Quat Law Offices
678 Massachusetts Avenue, Suite 702
Cambridge, MA 02139
ken@quatlaw.com